**John W. CRUMP, Jr., Plaintiff-Appellant,**

v.

**Gene CROSSGROVE, the Jewel Box of Knoxville, Inc., and Jewel Box Stores Corporation, Defendants-Appellees.**

Court of Appeals of Tennessee,
Middle Section.

Oct. 29, 1976.

R. B. Parker, Jr., Parker, Nichol & Finley, Nashville, for plaintiff-appellant.

Thomas H. Peebles, III, Trabue, Sturdivant & DeWitt, Nashville, for defendants-appellees.

OPINION

SHRIVER, Presiding Judge.

The Case

This is a suit for damages, both compensatory and punitive, for false arrest, wrongful imprisonment and malicious prosecution.

The case was tried to a jury on December 4, 1975, before Honorable Stephen North, Judge of the Fifth Circuit Court of Davidson County, Tennessee, and resulted in a verdict and judgment for $1,000.00 compensatory and $10,000.00 punitive damages, or a total of $11,000.00 in favor of plaintiff against all defendants.

From this judgment the plaintiff appealed and has assigned error.

### Assignment of Error

There is a single assignment as follows:

"The Court erred in failing to grant the motion of the plaintiff to set aside the verdict of the jury and the judgment entered thereon and to grant plaintiff a new trial on the ground that the verdict of the jury was inadequate, and so inadequate as to evince passion, prejudice and caprice on the part of the jury."

### The Pleadings and the Facts

The original complaint, filed February 1, 1974, sets forth the fact that the plaintiff is a resident and citizen of Davidson County, Tennessee and that the defendant, Gene Crossgrove, is the Manager of The Jewel Box, a jewelry store in the Rivergate Shopping Center in Davidson County; that on or about October 17, 1973, at approximately 9:30 p. m., during regular business hours, plaintiff entered the retail jewelry store of defendants for the purpose of shopping for a gold chain which he believed he might be able to purchase there and, while inspecting a gold medallion owned by the defendants, defendant Crossgrove asked permission to see the diamond ring that plaintiff wore on his finger and suddenly pulled said ring from his finger and locked it in the store safe, announcing to the plaintiff that the ring belonged to the store and that it had been stolen several days earlier; that the ring was valued in excess of $2,500.00 and, although plaintiff demanded its immediate return and insisted that the police be called when the defendant refused to return the ring, the defendant persisted in keeping possession of said ring and when police came secured the arrest of plaintiff on the charge of receiving and concealing stolen goods.

It is charged that plaintiff was arrested and arraigned in the General Sessions Court of Davidson County and held under a $2,000.00 bond pending preliminary hearing on the charge of receiving and concealing stolen property which is a felony in Tennessee, as defined by T.C.A. 39–4217(C).

Without reciting the details as set forth in the complaint, at the preliminary hearing the charges were dismissed against the plaintiff and he subsequently filed this suit for $100,000.00 compensatory and $100,-000.00 punitive damages and demanded a jury to try the cause.

Count Two of the complaint charges that as a direct and proximate result of his wrongful arrest and imprisonment and prosecution, he was frightened, humiliated, injured in his good name and reputation, subjected to public disgrace, suffered physical abuse and great mental anguish and lost time from his work and put to the expense of attorneys' fees and bonding fees, all by reason of the wrongful acts of the defendants.

The defendants filed an answer admitting the facts with respect to the ring and its possession acquired by the defendants as described in the complaint and, by amended and supplemental answer, the defendants made further admissions, including the fact that defendant Crossgrove charged plaintiff with receiving stolen property and that plaintiff was arrested and taken to the Metropolitan Police Headquarters; that they appeared on October 19, 1973 for a preliminary hearing in the General Sessions Court and that at said preliminary hearing it was discovered that the trademark in the ring was "Stylecrest" rather than "Artcrest" but deny that such was clear and obvious. It is further admitted that at this hearing it was determined that the ring did not belong to the defendants but, in fact, belonged to the plaintiff and was not the ring that had been stolen from the defendants. They deny that the action of Crossgrove was malicious or intentional but admit that Crossgrove should have made a more thorough inspection of the ring prior to the prosecution of the plaintiff. The answer proceeds:

"Defendants, therefore, admit liability for compensatory damages proximately caused by the plaintiff's arrest and prosecution. All other allegations contained in Paragraph 8 of the complaint are denied."

The record shows that plaintiff was 22 years of age at the time of his arrest and prosecution, unmarried and living with his

parents and four brothers and sisters in Nashville; after graduating from Cumberland High School, he attended Tennessee State University two years, majoring in History; that prior to October 17, 1973, plaintiff had never been arrested or charged with any criminal violation in his life. It is shown that plaintiff was resourceful and industrious, having held two or more jobs since High School where for about three and a half years he earned from $800.00 to $1200.00 a month and he had other business interests that produced income for him. It appears that about a year before his arrest, as above set forth, he bought a diamond ring for $2,500.00 which bore a trademark on the inside of the ring "Stylecrest". This was the ring that defendant Crossgrove took from his finger and locked in the safe, claiming that it was the property of the jewelry store and had been stolen.

At the time the ring was taken plaintiff undertook to point out to Mr. Crossgrove that the ring bore a trademark "Stylecrest" and not the store's trademark "Artcrest", but defendant would not heed his protestations and also refused to call persons whose names were given him by the plaintiff to verify the fact that the ring was his.

Plaintiff was placed in jail, fingerprinted, booked and mugged, his arrest record recorded and his bail set at $2,000.00, and he had to pay a professional bondsman $200.00 to get out of jail.

At the preliminary hearing, the Assistant District Attorney examined the ring and when told that the trademark of The Jewel Box was "Artcrest" and was imprinted in the ring, he discovered that the imprinted name in the ring was "Stylecrest", whereupon, after Mr. Crossgrove examined and found this was true, the accused who is plaintiff-appellant here was released and his ring restored to him.

It is argued by counsel for the plaintiff that after the charges against plaintiff were dismissed at the preliminary hearing, neither Mr. Crossgrove nor any of the other corporate defendant's representatives expressed any apology, sorrow or regret to the plaintiff for their contumacious, grossly negligent and malicious acts that caused irreparable harm and damage to the plaintiff.

## Our Conclusions

Counsel for plaintiff earnestly insist that the verdict and judgment of $1,000.00 compensatory and $10,000.00 punitive damages is so inadequate as to evince passion, prejudice and caprice on the part of the jury, and that we should, therefore, reverse the judgment of the Court and remand for a new trial limited to a determination of the amount of damages to be awarded, both compensatory and punitive.

Counsel for plaintiff sets out in considerable detail the circumstances surrounding plaintiff's arrest, imprisonment and prosecution and points to the absolute absence of any justification on the part of the defendants for their conduct.

Plaintiff testified that he was humiliated and embarrassed and, while the proof introduced shows that as a result of his arrest and prosecution he had to make a bond at the cost of $200.00, pay his attorney $200.00 for defense in the case and missed two days from his work, it also appears that the plaintiff did not lose his job because of the incident, and of the several witnesses who were called in his behalf, their testimony seems to indicate that plaintiff's reputation was, in fact, not damaged, at least among his friends and those who knew him and where his reputation remained very excellent. There is also the testimony of Mr. James W. Chambers, III, a banker who stated that this particular incident did not affect plaintiff's credit or the ability to secure loans.

█ The proposition is so well established in our jurisprudence in Tennessee that we need only to mention that the verdict of a jury in a suit of this character and which is approved by a Trial Judge is very seldom disturbed by the Appellate Courts and relief such as that sought by the plaintiff herein is generally denied unless the amount of the verdict is so grossly inadequate as to clearly

evince passion, prejudice and caprice. *Reeves v. Catignani,* 157 Tenn. 173, 7 S.W.2d 38 (1927); *Lunn v. Ealy,* 176 Tenn. 374, 141 S.W.2d 893 (1939); and *Phelps v. Magnavox,* 497 S.W.2d 898 (Tenn.App.1972).

It has also been held in a number of our cases that punitive damages are not awarded as a matter of right but the amount of such damages is peculiarly within the discretion of the jury. See *Davis v. Farris,* 1 Tenn.App. 144 (1925); *Phillips v. Newport,* 28 Tenn.App. 187, 187 S.W.2d 965 (1945).

We think it not inappropriate to observe that the facts and circumstances surrounding the arrest and prosecution of this young man are such as would have supported a considerably larger award of damages, both compensatory and punitive. On the other hand, we cannot consistently hold that the verdict of the jury, as approved by the Trial Judge in this case, is so grossly inadequate as to evince passion, prejudice and caprice on the part of the jury. It must be admitted that the award is within the range of reasonableness to the extent that the jury who saw the witnesses and the parties and heard the case and the Trial Judge who was closer to the facts and circumstances than we are acted within the bounds of reason in respect to the award of damages to the plaintiff.

It results that the assignment of error must be overruled and the judgment of the Trial Court affirmed.

AFFIRMED.

TODD and DROWOTA, JJ., concur.